# United States Court of Appeals for the Federal Circuit

---

**INFO-HOLD, INC.,**
*Plaintiff-Appellant*

v.

**APPLIED MEDIA TECHNOLOGIES CORPORATION,**
*Defendant-Appellee*

---

2013-1528

---

Appeal from the United States District Court for the Southern District of Ohio in No. 08-CV-0802, Judge Timothy S. Black.

---

Decided: April 24, 2015

---

DANIEL JOSEPH WOOD, Info-Hold, Inc., Cincinnati, OH, JAMES L. KWAK, Standley Law Group LLP, Dublin, OH, argued for plaintiff-appellant.

RAYMOND R. FERRERA, Adams & Reese LLP, Houston, TX, argued for defendant-appellee. Also represented by MELISSA STOK RIZZO, DONALD A. MIHOKOVICH, Tampa, FL.

---

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

This case comes before us on appeal of a final judgment that Applied Media Technologies Corporation ("AMTC") does not infringe U.S. Patent No. 5,991,374 ("'374 patent"). Info-Hold, owner of the '374 patent, asserted the patent against AMTC and Muzak LLC in separate suits before the same judge in the Southern District of Ohio. Those suits led to separate appeals, which were argued on the same day before the same panel. We address the issues raised in Info-Hold's appeal in the Muzak suit in a separate opinion.

We find the district court adopted a construction that improperly narrowed the scope of the claims. We *reverse* the district court and *remand* for further proceedings consistent with our opinion.

## BACKGROUND

The '374 patent is directed to systems, apparatuses, and methods for playing music and messages (e.g., advertisements) through telephones and public speaker systems. Playback order of the music and message tracks is set on a remote server. The remote server generates and sends control signals to message playback devices, telling them to access and play back tracks in a specified order. One use of the disclosed technology involves directing the output of the message playback devices to a public address system at retail stores, so customers can hear the music and advertisements while shopping. The output of the message playback device can also be directed to a music-on-hold ("MOH") system, which plays the tracks over the telephone to callers who are on hold.

In January 2010, an *ex parte* reexamination proceeding was initiated on the '374 patent. After amendment of some claims and cancellation of others, the '374 patent emerged from reexamination. Reexamined independent

claim 7 is representative of the technology claimed in the '374 patent and recites:

> 7. A programmable message delivery system for playing messages on message playback devices at one or more remote sites comprising:
>
> > a communication link;
> >
> > a plurality of message playback devices, each of said message playback devices communicating with a respective telephone system and comprising a storage device for storing messages and for playing selected ones of said messages through an output of said message playback device when a caller is placed on hold; and
> >
> > a computer remotely located from said plurality of message playback devices and operable to generate and transmit control signals via said communication link for controlling at least one of said plurality of message playback devices;
>
> each of said plurality of message playback devices being adapted to receive said control signals via said communication link and being programmable to access at least one of said messages from said storage device and to provide said accessed message to said output in accordance with said control signals *when a caller is placed on hold*;
>
> wherein said computer comprises a display device and is programmable to generate screens on said display device that include user selectable menu items for selection by an operator to define relationships between said plurality of message playback devices and

>said messages, the screens guiding an operator to make choices selected from the group consisting of which of said messages are to be played, which of said plurality of message playback devices are to play said selected messages, a time of day when said control signals are to be transmitted to said message playback devices, a date on which said control signals are to be transmitted to said message playback devices, a sequence in which said selected messages are to be played, and how many times to repeat at least one of said selected messages in said sequence, and to generate said control signals to implement said choices via said message playback devices.

'374 patent reexamination certificate, col. 1 ll. 28-67.

## LITIGATION HISTORY

Info-Hold filed suit in November 2003, accusing AMTC's Remotelink IP and EOS Horizon devices ("AMTC's Accused Devices") of infringing the '374 patent. During the litigation, a third-party requester initiated an *ex parte* reexamination of the '374 patent. The Patent Office's decision to reexamine the '374 patent resulted in a stay of the infringement suit against AMTC that was pending in the district court. While the reexamination proceeding was pending, Info-Hold brought a separate suit against Muzak LLC ("Muzak"), with the same judge in the Southern District of Ohio presiding over both cases. After the '374 patent emerged from reexamination, the stay of the AMTC suit was lifted. Subsequently, it became apparent that the district court would conduct claim construction proceedings in the Muzak case first. Info-Hold and AMTC agreed to be bound in their case by the constructions rendered in the Muzak case. J.A. 1296-97.

Among the terms the district court construed in the Muzak case was "when a caller is placed on hold." The

district court construed the term to mean "at the moment a caller is placed on hold," a construction favoring Muzak. *Info-Hold, Inc. v. Muzak Holdings LLC*, No. 1:11-cv-283, at *8 (S.D. Ohio Sept. 10, 2012).

In this case, the district court issued an order construing three terms, adopting AMTC's proposed construction for each. The district court primarily relied on statements from the patent's written description to support its claim construction. Before construing the claims, however, the district court also noted its interest in what it viewed as "extrinsic evidence related to" U.S. Patent No. 6,741,683 (" '683 patent"), namely the '683 patent's Notice of Allowability. *Info-Hold, Inc. v. Applied Media Techs. Corp.*, No. 1:08-cv-802, at *7 (S.D. Ohio Apr. 25, 2013) ("*Claim Construction Order*").[1] According to the district court, when explaining the reasons for allowance of the '683 patent, the examiner stated that prior art MOH patents did not teach systems in which the local device initiates contact with a server to determine whether new content is available. *Id.* The district court explained that this "statement assists the Court in determining what a person of ordinary skill in the art would understand the claims to present" at the time of the invention described in the '374 patent. *Id.* The district court did not tie its construction of any of the terms in dispute to this statement or otherwise explain how the statement affected its constructions.

The district court construed "transmit" as "to initiate a contact with and send an electronic signal to another device." *Id.* at *8. It construed the term "message play-

---

[1] The '683 patent issued over three years after the '374 patent issued and is unrelated to the '374 patent. The '683 patent covers local on-hold music devices that contact and interact with a server from which the local device receives content.

back device" as "a device configured to select and access from its storage device one or more stored messages and to play those messages through an output, and adapted to receive control signals after initiation of contact from another source." *Id.* And it construed the term "operable to generate and transmit control signals" as "capable to initiate a contact with the message playback device, and generate and send control signals to it." *Id.* at *9. The constructions effectively required any communication between the server and the message playback device to be initiated by the server, a construction favorable to AMTC.

After the district court rendered constructions unfavorable to Info-Hold in both cases, AMTC and Info-Hold filed a joint stipulation of noninfringement in favor of AMTC. The stipulation stated that the construction of each of the three terms in this case was dispositive on the issue of infringement for each claim having any of the terms, thereby establishing noninfringement for AMTC's Accused Devices. Likewise, the stipulation conceded that the district court's construction of "when a caller is placed on hold" established that AMTC's Accused Devices did not infringe each claim having this term. The parties further requested that the district court enter final judgment of noninfringement to allow Info-Hold to appeal the constructions. Based on the parties' stipulations and request, the district court entered final judgment of noninfringement in favor of AMTC.

Info-Hold appeals the district court's claim constructions rendered in this case, as well as the construction of the term "when a caller is placed on hold" from the Muzak case. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review the district court's evaluation of the patent's intrinsic record during claim construction de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Subsidiary factual determinations based on

extrinsic evidence are reviewed for clear error.  *Id.*  The ultimate construction of the claim is a legal question and, therefore, is reviewed de novo.  *Id.*

Claim terms are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  Such a skilled artisan reads claim language in the context of the claims, the specification, and the prosecution history, using them to resolve any uncertainties.  Though the claim term may appear plain on its face, we may depart from that plain meaning "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citation omitted).

Info-Hold's appeal of the district court's construction of the three terms in this case—"transmit," "operable to generate and transmit control signals," and "message playback devices"—challenges whether the district court erroneously required that all communication between the remote server and the message playback devices must be initiated by the server.

As noted above, the district court referred to the later-issued '683 patent—which is cited in the '374 patent's reexamination certificate—and the Notice of Allowability for the '683 patent.  Neither of these references calls for clear-error review.  The former is part of the '374 patent's own prosecution history (on reexamination), hence intrinsic evidence whose interpretation is "a determination of law."  *Teva*, 135 S. Ct. at 841.  The latter is not itself cited in the '374 patent's prosecution history, and we need not classify it as "intrinsic" or "extrinsic" for at least these reasons: this public record presents no disputed issue of fact as to the Notice's existence or content; the district

court made no findings about it; and what remains is what, if any, significance it might have for the ultimate claim construction, which is a question of law. *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, No. 2014-1094, 2015 WL 1501565 at *3, *5 (Fed. Cir. Apr. 3, 2015). Therefore, we apply the de novo standard in reviewing the district court's claim constructions. We begin our review with the term "transmit," given that the construction of the term is vital to, and necessarily influences, the construction of the other terms.

### I.   "Transmit"

The district court construed the term "transmit" to mean "initiate a contact with and send an electronic signal to another device." *Claim Construction Order* at *10. It based the construction on its understanding that the patent exclusively disclosed the sending of control signals from the server to the remote playback devices, and that the remote playback devices were only configured to receive transmissions.

Info-Hold argues that the district court erred by limiting the claims to features disclosed in the preferred embodiment. It notes that we have rejected the contention that it is proper to limit the claims to the single disclosed embodiment absent a clear expression of intent to limit the claims' scope. *E.g.*, *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010), *cert. denied on other grounds*, 131 S. Ct. 3020 (2011). Info-Hold also contends that it is improper to import limitations from the specification absent an express statement limiting the claims. Since there is no language in the claims limiting the term "transmit" to the initiation of communication to either device prior to transmission of data, initiation by either the server or the message playback device would be covered by the claims.

AMTC contends that if the preferred embodiment is synonymous with the invention itself, our precedent

restricts the scope of the claims to the features disclosed in that embodiment. *See Wang Labs. v. Am. Online, Inc.*, 197 F.3d 1377, 1382 (Fed. Cir. 1999) (limiting claims to one of two alternatives because only one was described and enabled). According to AMTC, in the single embodiment disclosed in the '374 patent, the message playback device only receives control signals after another device initiates contact. Further, the message playback device disclosed in the invention is incapable of initiating contact with another device, meaning that transmission can only be initiated by the server.

We find that the claim term "transmit" and the specification support a construction that is neutral as to whether the message playback device or the server initiates the transmission. Nothing in the word "transmit" suggests a limitation on initiation: there is no linguistic ambiguity to resolve. And the specification confirms the term's neutrality as to initiation. For instance, the patent discloses that the "message playback device is preferably operational in a receive-only manner . . . ." '374 patent, col. 18 ll. 5-6. The mention of a preferred "receive-only" manner implies the invention's ability to operate in a manner in which the message playback device may transmit. Operating in such a manner would allow for communications which are initiated by the message playback device. The claims themselves are indeterminate as to which communication endpoint initiates the transmission. Also, even if the embodiment in the specification only disclosed server-initiated communication, we have "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citations and quotations omitted).

The '374 patent's written description does not invoke the exception to the rule that we will not read limitations

from the preferred embodiment into the claims. Under that exception, the scope of the invention is properly limited to the preferred embodiment if the patentee uses words that manifest a clear intention to restrict the scope of the claims to that embodiment. *Id.* We find nothing in the '374 patent's preferred embodiments or the remainder of the specification that evinces a clear intention to restrict the invention's communications to those initiated by the server. Absent an intentional statement of restriction, we refuse to restrict the patent's claims to cover only server-initiated transmissions.

We also find a lack of a clear, intentional disavowal of claim scope that would require the incorporation of a step of initiating contact in the construction of "transmit." We find no basis to depart from the ordinary and customary meaning of the term. *See, e.g.*, *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002) (explaining the presumption favoring ordinary meaning will be overcome by the inventor's use of words that represent "a clear disavowal of claim scope"), *cert. denied*, 538 U.S. 1058 (2003).

Moreover, the patentee has not defined the term "transmit" by implication. We have found that a patentee defined a term "by implication" where the patentee used the term throughout the specification in a way that was consistent with only one meaning. *Bell Atl. Network Servs. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). This principle does not apply in this case because the '374 patent does not consistently use the term "transmit" in a way that necessarily restricts the term to server-initiated communications. As explained above, the patent's "preferably operational in a receive-only manner" language illustrates that transmission can occur in either direction. Other statements in the specification also use the term "transmit" in a way that is consistent either with server-

initiated or message-playback-device-initiated communications. For instance, the specification discloses that "the invention relates to a system for generating and transmitting message playlists to remotely located optical disc players" that are part of MOH systems. *Claim Construction Order*, at *4 (citing '374 patent, col. 1 ll. 9-11) (emphases omitted). While this statement illustrates the direction of transmission of the playlists, it says nothing about whether the remote playback device could first send a signal requesting that the server transmit the playlist. This shows that the term "transmit" does not require all communications to be server-initiated. Accordingly, the patentee has not implicitly defined the term "transmit" by its usage in the '374 patent.

Finally, we decline to accept AMTC's invitation to analyze this case under *Wang*. This court explained in *Liebel-Flarsheim* that we have never read *Wang* to stand for the proposition that a patent's claims are limited to the subject matter discussed in the sole embodiment of a patent. 358 F.3d at 907. In *Wang*, the disputed term could only be understood to have one possible meaning when read in the light of the specification. *Wang*, 197 F.3d at 1382. Furthermore, during prosecution, the inventors disclaimed a construction that would have encompassed the second possible meaning. *Id.* at 1383-84. As discussed above, the '374 patent does not support a reading that restricts the term "transmit" to one meaning. Nor does AMTC point to any disclaimer in the intrinsic evidence that would restrict the term to server-initiated communications. Therefore, *Wang* does not control this case.

In sum, the '374 patent's discussion of preferred embodiments discloses the possibility of transmission that may be initiated by the message playback device, while there is no requirement in the remainder of the patent's disclosure that the server initiate all communications. As such, the claims should not be limited to server-initiated

transmissions. For these reasons, we *reverse* the district court's construction of the term "transmit."

## II. "MESSAGE PLAYBACK DEVICE" AND "OPERABLE TO GENERATE AND TRANSMIT CONTROL SIGNALS"

The district court's construction of both of these terms rests on its adopted construction that limits the claimed invention to server-initiated transmissions. The construction of "message playback device" includes the requirement that the device be "adapted to receive control signals *after* initiation of contact from another source." *Claim Construction Order*, at *8 (emphasis added). Similarly, the construction of "operable to generate and transmit control signals" requires the capability "to initiate contact with the message playback device." *Id.* at *9. Additionally, the latter term includes the term "transmit."

Because the construction of each of these terms depends on the construction of the term transmit, we *reverse* the district court's construction of the terms "message playback device" and "operable to generate and transmit control signals."

## III. "WHEN A CALLER IS PLACED ON HOLD"

Info-Hold asks us to construe the term "when a caller is placed on hold." As discussed above, Info-Hold and AMTC agreed to be bound by the construction rendered in the Muzak case. The parties' arguments in this case regarding the construction of this term are not materially different from the arguments presented in the Muzak case. Therefore, we decline to adopt a different construction from that rendered in the Muzak case.

## CONCLUSION

Because the district court erred in limiting the claims to require that all communications between the server and message playback devices be server-initiated, we *reverse* the construction of the term "transmit," as well as

the terms "message playback device" and "operable to generate and transmit control signals," which depend on the construction of "transmit." We further *remand* the case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

Each party shall bear its own costs.